SAN JUAN LIQUORS, INC., a Florida Corporation, Wallace Smith, and Donna Hall, Plaintiffs,

v.

CONSOLIDATED CITY OF JACKSONVILLE, FLORIDA, an incorporated municipality; Dale Carson, in his official capacity as Sheriff of the Consolidated City of Jacksonville, Florida; and T. Edward Austin, in his official capacity as State Attorney for the Fourth Judicial Circuit of Florida, Defendants.

No. 79–663 Civ–J–B.

United States District Court, M. D. Florida, Jacksonville Division.

Nov. 8, 1979.

William J. Sheppard, Jacksonville, Fla., for plaintiffs.

Laurence C. Pritchard, Asst. State's Atty., Jacksonville, Fla., for defendant, T. Edward Austin.

Grady W. Martin, Asst. Counsel, Jacksonville, Fla., for defendants, Consolidated City of Jacksonville and Dale Carson.

## OPINION

SUSAN H. BLACK, District Judge.

Plaintiffs in this case challenge the constitutionality of the "Adult Entertainment Services Code" of the City of Jacksonville, Florida. Title 18, *Jacksonville Municipal Code* § 410.101, *et seq.* ("the ordinance"). Plaintiff San Juan Liquors, Inc. ("San Juan") is a Florida corporation which owns and operates, within the City of Jacksonville, an "adult dancing establishment" as

defined by § 410.103(e) of the ordinance. Plaintiff Wallace Smith is employed by San Juan as a bartender and is subject to the regulations contained in § 410.404 of the ordinance. Plaintiff Donna Hall is employed as a dancer by another "adult dancing establishment" which, though not a party to this action, operates a business very similar to that operated by San Juan. She is, therefore, also subject to the regulations contained in § 410.404 of the ordinance.

The constitutionality of the ordinance as applied to "adult bookstores," "adult motion picture theatres" and "adult massage parlors" has been ruled on previously. *See Bayside Enterprises, Inc. v. Carson*, 450 F.Supp. 696 (M.D.Fla.1978) (*"Bayside I"*); *Bayside Enterprises, Inc. v. Carson*, 470 F.Supp. 1140 (M.D.Fla.1979) (*"Bayside II"*). However, under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Court in the *Bayside* cases abstained from ruling on the validity of the ordinance as applied to "adult dancing establishments." *See also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Cornwell v. Ferguson*, 545 F.2d 1022 (5th Cir. 1977). The Court in this case, therefore, must determine only whether, under the ordinance as written, the principles articulated in *Bayside I* and *II* are also applicable to "adult dancing establishments" as that term is used in the ordinance. For the reasons discussed below it determines they are.

### A. *Plaintiff Donna Hall*

Hall challenges the constitutionality of § 410.404 of the ordinance. This section requires that prospective employees of an "adult dancing establishment" receive approval from the Sheriff, and prohibits approval of an employee who within the past three years has been convicted of a "specified criminal act" as defined by § 410.-103(m) of the ordinance. In 1978 Hall was convicted of such a "specified criminal act." When she submitted her application for approval as required by the ordinance, Hall was verbally informed by a vice squad officer that the application would be denied because of her prior conviction.

The initial question is whether Hall may claim First Amendment protection. While dance can be a method of expression protected by the First Amendment, *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Attwood v. Purcell*, 402 F.Supp. 231 (D.Ariz.1975); *Wood v. Moore*, 350 F.Supp. 29 (W.D.N.C. 1972), it is clear that not all activity which may be labeled dance is so protected. In fact, the City could completely prohibit the type of activity engaged in by Hall if the ordinance were narrowly drawn to prohibit topless dancing only in establishments which serve liquor. *See e. g., California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); *Felix v. Young*, 536 F.2d 1126 (6th Cir. 1976). *But see Clark v. City of Fremont*, 377 F.Supp. 327 (D.Neb. 1974). However, the Jacksonville ordinance is not narrowly drawn but broadly sweeps within its scope many performers and performances which clearly would be protected by the First Amendment. *See e. g., Southeastern Promotions, Ltd. v. City of Mobile, Ala.*, 457 F.2d 340 (5th Cir. 1972); *Southeastern Promotions, Ltd. v. City of West Palm Beach*, 457 F.2d 1016 (5th Cir. 1972). Therefore, if Hall has standing to challenge the facial overbreadth of the statute, it is unnecessary for the Court to determine whether her individual activity is a constitutionally protected means of expression.

In the sensitive area of First Amendment rights Courts have generally allowed plaintiffs standing to assert the facial invalidity of overbroad statutes "with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965). "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963); *accord, Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972).

■ The standing required to challenge the facial overbreadth of statutes which infringe protected speech is unusually liberal because overbroad statutes present two specific dangers to constitutional freedoms. First, even if the ordinance is never enforced against those exercising protected freedoms, its existence may deter the exercise of those freedoms. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). "The threat of sanctions may deter . . . almost as potently as the actual application of sanctions." *NAACP v. Button, supra* at 433, 83 S.Ct. at 338. Thus, to protect against the "chilling effect" of overbroad statutes in the area of First Amendment rights plaintiffs have been allowed standing to challenge the overbreadth of a statute even though their specific activity might have been regulated by a more narrowly drawn statute.

■ The other danger to First Amendment freedoms inherent in overbroad statutes is their "invitation to discriminatory enforcement." *Coates v. City of Cincinnati*, 402 U.S. 611, 616, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). An overbroad statute may be enforced against activity found unpopular by the community while more accepted means of expression which also fall within the statutory prohibition are ignored. In essence, under such a statute the Sheriff's Department is charged with the responsibility of drawing the line between constitutionally protected and unprotected activity. This is constitutionally impermissible. The protection of constitutional rights should not be left to the discretion of law enforcement officers, however well-meaning they may be. *See Grayned v. City of Rockford, supra.*

■ However, when considering a facial challenge to a statute for overbreadth, it is necessary to act cautiously to avoid undue interference with a state regulatory program. The Court will allow a facial challenge to a statute only if its deterrent effect on legitimate expression is both real and substantial and it is not readily subject to a narrowing construction by the state courts. *See Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975).

■ Both criteria required to challenge a statute for overbreadth are met in the present case. As in *Erznoznik*, the plain terms of the ordinance are not easily susceptible to a narrowing construction. *Accord, Attwood v. Purcell*, 402 F.Supp. 231 (D.Ariz.1975). Further, as in *Erznoznik*, the terms of the ordinance apply to all persons who operate or are employed by any business that features dancers who expose certain "anatomical areas", without regard to the type of production or its possible social value. They must either obtain a license or risk criminal penalties, a substantial deterrent to the regulated activity. Therefore, the Court finds the plaintiff has standing, and she will be allowed to challenge the facial overbreadth of the statute. Consequently, it is unnecessary for the Court to determine whether her specific conduct falls within the realm of constitutionally protected expression.

■ Once it is established that plaintiff has standing to challenge the facial overbreadth of the statute, the prohibition against approval of one convicted of a "specified criminal act" contained in § 410.-404(a) must fall. This prohibition operates as a prior restraint of protected expression on the basis of past conduct. Such a prohibition is clearly impermissible. *See Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); *Universal Amusement Co. v. Vance*, 587 F.2d 159 (5th Cir. 1978) (en banc), *prob. juris. noted*, 442 U.S. 928, 99 S.Ct. 2857, 61 L.Ed.2d 295 (1979); *Bayside Enterprises, Inc. v. Carson*, 470 F.Supp. 1140 (M.D.Fla.1979).

The defendants will be enjoined from refusing to issue Hall the necessary approval for employment by an "adult dancing establishment" based solely on her prior conviction.

### B. Plaintiff San Juan

■ Much of the above discussion is equally applicable to San Juan. Though under *California v. LaRue, supra,* the city could completely prohibit adult entertainment in establishments which serve alcoholic beverages, the Jacksonville ordinance does not regulate only barroom dancing, but purports to regulate all entertainment which involves the exposure of certain parts of the body. Such entertainment will undoubtedly include productions of unquestionable artistic and social value which warrant First Amendment protection. As with Hall, the dangers of a possible chilling effect on constitutionally protected expression and the possibility of discriminatory enforcement favor allowing San Juan standing to challenge the ordinance even though the entertainment offered by San Juan itself would be subject to state control. *See California v. LaRue, supra; Doran v. Salem Inn, Inc., supra.*

■ This, however, does not end the inquiry. Unlike the complete prohibition placed on performers by § 410.404, the ordinance does not seek to prohibit any type of entertainment, but only establishes certain requirements for the licensing of businesses which offer adult entertainment. Even activity protected by the First Amendment is subject to reasonable time, place and manner regulations. Such regulations need only be reasonable in light of the public interest to be protected. *See, Young v. American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).

■ The challenged licensing regulations, as applied to adult bookstores and adult motion picture theatres, were carefully reviewed in *Bayside I and II.* In that context, the majority of the licensing requirements contained in the ordinance were found to be constitutionally permissible. Those that were found invalid have been repealed or amended to comply with constitutional requirements. Plaintiffs have offered no evidence or argument why regulations valid as to motion pictures and printed material should not be valid for adult dancing as well. In fact, because printed material and motion pictures are more akin to "pure speech", they deserve greater First Amendment protection than dance which has a larger element of conduct. *See United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); *Felix v. Young,* 536 F.2d 1126 (6th Cir. 1976); *Kew v. Senter,* 416 F.Supp. 1101 (N.D.Tex.1976).

The only regulations applicable to adult dancing establishments which are not also applicable to other licensed premises, and were not ruled on in the *Bayside* opinions, are contained in § 410.305. Enforcement of these regulations has been enjoined by a state court. *Bernard v. City of Jacksonville,* Case No. 77–9462 CA (4th Judicial Circuit, Duval County, 1978). The Court, therefore, need not consider these provisions.

For the above reasons, the Court shall refuse to enjoin the enforcement of the ordinance against San Juan.

### C. Plaintiff Wallace Smith

Unlike Hall and San Juan, Smith asserts no First Amendment rights. Rather, alleging that as applied to him the licensing requirement of § 410.404 is "overly broad and does not bear any rational relationship to any valid municipal purpose . . .," *Original Complaint for Declaratory Relief, Preliminary Injunction, and Permanent Injunction,* p. 6, Smith raises due process and equal protection claims.

■ Though citizens have a due process right to engage in the common activities of the community, *Hansen v. Unified School Dist. No. 500, Wyandotte County, Kansas,* 364 F.Supp. 330 (D.Kan.1973), the states' police power includes the right to regulate certain professions. Such regulations need only be rationally related to the promotion of the public health, safety, or welfare. *U. S. v. Karnes,* 437 F.2d 284 (9th Cir. 1971). Without question, the regulation of the sale of alcoholic beverages is a legitimate exercise of the police power. In fact, the power of the states to regulate the sale of alcoholic beverages is almost unlimited. *Berry v. Arapahoe and Shoshone*

*Tribes,* 420 F.Supp. 934 (D.Wyo.1976). *See also California v. LaRue, supra.* The licensing of bartenders falls well within a legitimate regulatory scheme.

Nor is Smith's equal protection claim any stronger. Though bartenders in other types of establishments are not required to be licensed, differences in business regulations need only be supported by some "rational basis". *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). The classification of establishments serving alcoholic beverages according to their effect on the community is a rational and legitimate exercise of the police power. *Jones v. City of Troy,* 405 F.Supp. 464 (E.D. Mich.1975). The City Council of Jacksonville found that certain illegal, immoral, or unhealthy activities tended to accompany the type of business by which Smith is employed. This finding applies not to bars in general, but to establishments which provide adult entertainment. It is, therefore, rational to require that bartenders employed by adult entertainment establishments be licensed while those employed by other types of bars need not be.

Thus, Smith's claim must fail on both its due process and equal protection grounds. The Court will refuse to enjoin enforcement of the licensing requirement against Smith.

For the foregoing reasons, the Court, on this date, will enter Final Judgment in accordance with this Opinion.